<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| WILLIAM HOUCK, Individually and On Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br>v.<br><br>EOS ENERGY ENTERPRISES, INC., JOSEPH MASTRANGELO, and NATHAN KROEKER,<br><br>　　　　　Defendants. | Case No. 23-cv-04113-JKS-MAH<br><br>**OPINION**<br><br>November 8, 2024 |

**SEMPER**, District Judge.

Before the Court is Defendants Eos Energy Enterprises, Inc. ("Eos" or the "Company"), Joseph Mastrangelo, and Nathan Kroeker's (collectively, "Defendants") motion to dismiss Plaintiff William Houck's ("Plaintiff" or "Houck") Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 26, "Def. Br.") Plaintiff filed a brief in opposition. (ECF 27, "Opp.") Defendants filed a brief in reply. (ECF 32, "Reply.") The Court reviewed Plaintiff's Second Amended Complaint (ECF 25, "SAC") and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion is **GRANTED.**

**I.　　FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff William Houck brings this putative class action on behalf of persons and entities that purchased or otherwise acquired Eos securities between May 9, 2023 and July 27, 2023, inclusive (the "Class Period"). (SAC ¶ 1.) Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act"). (*Id.*)

### A. Eos and the Individual Defendants

Founded in 2008, Eos designs, develops, manufactures, and markets zinc-based energy storage solutions for utility-scale, microgrid, and commercial & industrial ("C&I") applications. (*Id.* ¶ 21.) Eos is incorporated under the laws of Delaware with its principal executive offices in Edison, New Jersey. (*Id.* ¶ 17.) Eos' common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "EOSE." (*Id.*) It warrants trade under the symbol "EOSEW." (*Id.*) Defendant Joseph Mastrangelo was Eos' chief executive officer at all relevant times. (*Id.* ¶ 18.) Defendant Nathan Kroeker has been Eos' chief financial officer since January 23, 2023. (*Id.* ¶ 19.)

Plaintiff asserts that because Eos was not profitable, the Company touted its booked orders to the market. (*Id.* ¶ 23.) Eos would announce each newly booked order. (*Id.*) In its quarterly financial highlights, Eos included booked orders and order backlog information. (*Id.*) Eos' order backlog was vital to the Company's future because it demonstrated market interest in the Company's products. (*Id.* ¶ 24.) Eos executives would routinely discuss order backlog in earnings calls and would specifically respond to analyst questions about the backlog. (*Id.* ¶ 23.) The Company's backlog was used by Defendants to raise funds and increase stock value. (*Id.* ¶ 24.)

### B. Bridgelink Commodities

On March 9, 2022, Eos announced the largest deal in the Company's history. (*Id.* ¶ 30.) As Eos stated in a press release that day, Eos had entered a deal with Bridgelink Commodities for a total order value of up to $150 million, or nearly 75% of Eos' backlog. (*Id.*) On July 6, 2022, Eos announced another deal with Bridgelink Commodities that increased its order value to $181 million. (*Id.* ¶ 35.) As a result, the order backlog increased in value to over $460 million. (*Id.*)

### C. Allegations of Materially False and Misleading Statements

On May 9, 2023, the Company issued a press release titled "Eos Energy Enterprises Reports First Quarter 2023 Financial Results." (*Id.* ¶ 62.) Therein, the Company, in relevant part, stated:

> Eos Energy Enterprises, Inc. (NASDAQ: EOSE) ("Eos" or the "Company"), a leading provider of safe, scalable, efficient, and sustainable zinc-based long duration energy storage systems, today announced financial results for the first quarter ended March 31, 2023.
>
> **First Quarter Financial Highlights**
> - $8.8 million revenue, compared to $3.3 million in 1Q 2022, a 168% increase year-over-year.
> - Cost of Goods Sold of $26.9 million, a decrease of 24% compared to 1Q 2022, representing a 25% reduction in product unit cost year-over-year.
> - Operating expenses of $19.4 million remained flat year-over year.
> - $16.1 million cash balance on March 31, 2023, compared to $17.1 million on December 31, 2022.
> - Booked $86.3 million in orders, ***resulting in an order backlog of $535.1 million as of March 31, 2023,*** an increase of more than 2.5x versus 1Q 2022.

(*Id.*) Then, on May 10, 2023, the Company held an earnings call to discuss Eos' 2023 fiscal first quarter results. (*Id.* ¶ 63.) Therein, Defendant Mastrangelo, in relevant part, stated:

> Moving on to Page 4 on the operating highlights. You continue to see good progress. Commercially, I'll go through some more details on the pipeline in a future slide, but we continue to see the opportunity pipeline increase. We booked a large order for $87 million, nearly $87 million, and that ***brought our backlog up to $535 million with – representing 2.2 gigawatt hours of power.***
> . . .
> When you look at our current pipeline, current pipeline is up in Q2, and we signed over $500 million of LOIs. Now think again about how we think about the movement through our pipeline. We don't call it current pipeline unless we have a technical use case where we can provide a technical proposal to the customer, which then leads us to giving them a nonbinding financial quote, which that stands at $6 billion in and of itself. Our goal with that combined $7 billion is

3

> to then get customers to sign an LOI with us. So we get on the same side of the table with them and close the project out to allow them to generate revenue and allow us to put product out in the field. That stands now at $1.5 billion with 7 gigawatt hours of potential.
>
> ***We work through those. And when you think about the timing of LOI to firm commitment, you're working through various different aspects on commercial terms, permitting, land rights and interconnections to be able to get to a firm commitment that then goes into our backlog, which, as I stated earlier, stands at $535 million, up $71 million versus fourth quarter.***

(*Id.*) Plaintiff asserts the statements relating to the backlog were materially false and misleading because they failed to disclose material adverse facts about the Company's business, operations, and prospects. (*Id.* ¶ 64.) Plaintiff alleges that Defendants failed to disclose (1) that Bridgelink Power, the parent company of Eos' largest customer, Bridgelink Commodities, defaulted on a secured loan facility and was embroiled in litigation with the lender to seize the parent's assets; (2) that the foregoing threatened Bridgelink Commodities' commitment and ability to purchase Eos products; (3) that, as a result, there was a material risk to Eos' backlog; and (4) that, as such, there was a material undisclosed risk to Eos' business, operations, and prospects. (*Id.*)

### D.  The Iceberg Report

On July 27, 2023, during market hours, non-party Iceberg Research ("Iceberg") published a report entitled "62% Of $Eose's Backlog Is With Financially Distressed Bridgelink Whose Renewable Energy Assets Were Foreclosed And Auctioned Off In May." (*Id.* ¶ 48.) Therein, Iceberg explained that Bridgelink Power, the parent company of Bridgelink Commodities, had defaulted on a secured loan facility approximately two months after Bridgelink Commodities had signed the first order with Eos and was embroiled in litigation with the lender to seize its assets. (*Id.*) Eos had not disclosed the information about Bridgelink Power's financial issues. (*Id.* ¶ 49.)

On this news, Eos' stock price fell $0.83 per share, or 23.9%, to close at $2.65 per share on July 27, 2023, on unusually heavy trading volume. (*Id.* ¶ 50.)

That same day, after market hours, Eos issued a press release entitled "Eos Energy Enterprises Provides Preliminary Results & Issues Statement Regarding Its Customer Commitments and Backlog." (*Id.* ¶ 51.) In relevant part, the press release stated:

> The Company also issues the following response to statements made about its customer backlog in external reports, republished and amplified on social media, regarding two of the Company's customers:
> . . .
> The report also referred to legal proceedings involving multiple Bridgelink legal entities. The Company believes that its customer, Bridgelink Commodities, LLC, is a separate legal entity which is not implicated in the legal matters highlighted in today's statements. This customer, representing 45% of the Company's backlog, reconfirmed today that it continues to build pipeline and is actively seeking financing for energy storage projects covered by Eos's multi-year Master Supply Agreement.
>
> Eos' commercial pipeline remains strong and continues to grow in line with independent third party market forecasts. The Company believes its long-term business fundamentals are strongly supported by the secular shift occurring in the energy industry requiring long duration energy storage.

(*Id.*) Plaintiff asserts that the May 9, 2023 and May 10, 2023 statements regarding the Company's backlog were materially false and misleading because Defendants failed to disclose—as highlighted in the Iceberg Report—that Bridgelink Commodities' parent company defaulted on a secured loan facility and was embroiled in litigation with a lender to seize the parent's assets, which could impact Bridgelink Commodities' ability to fulfill its contractual obligations to Eos. (*Id.* ¶ 64.)

## II. LEGAL STANDARD

### a. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

### b. Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements. "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).

Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

### c. Private Securities Litigation Reform Act ("PSLRA") Pleading Requirements

"To state a claim for securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 639 (D.N.J. 2021) (citing *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014)).

For plaintiffs asserting securities-fraud claims, the PSLRA imposes additional pleading requirements. "The PSLRA established heightened pleading requirements for a plaintiff to meet in order to plead a cause of action successfully in class actions alleging securities fraud." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 241 (3d Cir. 2013). The PSLRA "requires that a complaint state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention to deceive, manipulate, or defraud." *Id.* at 241-42 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)) (internal quotations omitted). In other words, plaintiffs bringing a claim involving an allegedly false or misleading statement must "(1) 'specify each statement alleged to have been misleading [and] the reason or reasons why the

7

statement is misleading,' 15 U.S.C. § 78u-4(b)(1), and (2) 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' § 78u-4(b)(2)." *Rahman*, 736 F.3d at 242 (quoting *Tellabs*, 551 U.S. at 321).

Both provisions of the PSLRA pleading standard require that facts be pled "with particularity," echoing Federal Rule of Civil Procedure 9(b)'s requirements.[1] *Id.* at 241 n.3. Although the "PSLRA replaced Fed. R. Civ. P. 9(b) as the applicable pleading standard in private securities class actions," Rule 9(b)'s particularity requirement "is comparable to and effectively subsumed by the requirements" of the PSLRA. *Id.* This standard "requires plaintiffs to plead the who, what, when, where and how: the first paragraph of any newspaper story." *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009). Section 78u-4(b)(1) also adds the requirement that where "an allegation regarding [a defendant's] statement or omission is made on information [or] belief," plaintiffs must "state with particularity all facts on which that belief is formed"—that is, they must describe the sources of information with particularity, including "the who, what, when, where and how of the sources, as well as the who, what, when, where and how of the information those sources convey." *Id.*; *see* 15 U.S.C. § 78u-4(b)(1).

As to the second element, the PSLRA's approach for pleading scienter sharply deviates from Rule 9(b), which allows plaintiffs to plead the scienter element generally. *Avaya*, 564 F.3d at 253. Under the PSLRA, the court must evaluate whether all the facts in the complaint as alleged, taken collectively, give rise to a "strong inference of scienter" – not whether any individual allegation viewed in isolation meets that standard. *Tellabs*, 551 U.S. at 323. In determining whether the pleaded facts give rise to a strong inference of scienter, the court must "take into account

---

[1] Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Defendants do not separately move pursuant to Rule 9(b).

plausible opposing inferences." *Id.* This involves a comparative inquiry that evaluates how likely one conclusion is as compared to others, in light of the pleaded facts. *Id.* Thus, the court must consider plausible, nonculpable explanations for the defendant's conduct as well as inferences favoring the plaintiff. *Id.* at 324. Although the inference that the defendant acted with scienter need not be irrefutable, the inference must be more than merely "reasonable" or "permissible." *Id.* A complaint will survive only if a reasonable person would "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

### III. ANALYSIS

**A. Count 1: Violation of Section 10(b) of The Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants**

In Count 1, Plaintiff alleges Defendants violated Section 10(b) and Rule 10b-5. (SAC ¶¶ 89-99.) "The private right of action under Section 10(b) and Rule 10b-5 . . . creates liability for false or misleading statements or omissions of material fact that affect trading on the secondary market." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1417. To state a securities fraud claim pursuant to Section 10(b) and Rule 10b-5, a plaintiff "must allege (1) a material misrepresentation or omission, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 167 (3d Cir. 2014).

Defendants' first argument for dismissal of Plaintiff's claim is failure to plead a false or misleading statement. (Def. Br. at 14-19.) Plaintiff has identified the following statements, as originally bolded and italicized in the Second Amended Complaint, as false or misleading:

- In Eos' May 9, 2023 press release, the Company stated it "[b]ooked $86.3 million in orders, *resulting in an order backlog*

9

> *of $535.1 million as of March 31, 2023,* an increase of more than 2.5x versus 1Q 2022." (SAC ¶ 62.)
>
> - During Eos' May 10, 2023 earnings call discussing the Company's fiscal first quarter results, Defendant Mastrangelo stated that "We booked a large order for $87 million, nearly $87 million, and that *brought our backlog up to $535 million with – representing 2.2 gigawatt hours of power.*" (*Id.* ¶ 63.)
>
> - During that same call, Defendant Mastrangelo also stated "*We work through those. And when you think about the timing of LOI to firm commitment, you're working through various different aspects on commercial terms, permitting, land rights and interconnections to be able to get to a firm commitment that then goes into our backlog, which, as I stated earlier, stands at $535 million, up $71 million versus fourth quarter.*" (*Id.*)

Each of these statements relates to the Company's backlog. Plaintiff asserts that these statements were materially false or misleading because Defendants failed to disclose (1) that Bridgelink Power, Bridgelink Commodities' parent company, defaulted on a secured loan facility and was embroiled in litigation with the lender to seize the parent's assets; (2) that the foregoing threatened Bridgelink Commodities' commitment and ability to purchase Eos products; (3) that, as a result, there was a material risk to Eos' backlog; and (4) that, as such, there was a material undisclosed risk to Eos' business, operations, and prospects. (*Id.* ¶ 64.) Defendants argue that Eos was not required to comment on its counterparty's financial status, pending legal proceedings, or likelihood of honoring future contractual commitments. (Def. Br. at 16.) Defendants assert that making such disclosures would amount to speculation about future performance that would run afoul of the premise that there is no duty to speculate. (*Id.*)

Section 10(b) and Rule 10b-5 do not create an affirmative duty to disclose all material information. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). However, disclosure may be required in certain circumstances. "A duty to disclose under federal securities laws

10

may arise when a statute requires disclosure, insider trading occurs, or there is an inaccurate, incomplete, or misleading prior disclosure." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 173-74 (3d Cir. 2014) (citing *Oran v. Stafford*, 226 F.3d 275, 285-86 (3d Cir. 2000)). Specifically, "[d]isclosure is required . . . only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Matrixx*, 563 U.S. at 44 (quoting 17 C.F.R. § 240.10b-5(b)).[2] Plaintiff does not allege that Eos had a statutory duty to disclose or that insider trading occurred. Rather, Plaintiff asserts that the above statements regarding Eos' backlog were misleading because Defendants failed to disclose that the parent company of its largest customer was embroiled in litigation and experienced financial woes. (SAC ¶ 64.) Plaintiff asserts that the parent company's issues could affect the subsidiary, such that the subsidiary could be unable to fulfill its contractual obligations to Eos. (*Id.*) Plaintiff alleges that the subsidiary's potential inability to fulfill its contractual obligations was a material risk to Eos' backlog that Eos should have disclosed. (*Id.*)

When an outcome or risk is merely speculative, no duty to disclose arises. *See, e.g.*, *Williams v. Globus Med, Inc.*, 869 F.3d 235, 243 (3d Cir. 2017) (finding that a company did not have a duty to disclose a risk that had not "actually materialized" at the time of the allegedly misleading prior disclosure); *Oran v. Stafford*, 226 F.3d 275, 286 (3d Cir. 2000) (explaining that when "threat of product liability exposure was purely speculative" there was no duty to disclose such exposure); *Laasko v. Endo Int'l, PLC*, No. 20-07536, 2022 WL 3444038, at *5 (D.N.J. Aug. 17, 2022) ("Plaintiffs cannot claim that Defendants had a duty to disclose additional details associated with the risks of opioid-related litigation and liability where Defendants' risks were

---

[2] Indeed, "companies can control what they have to disclose under these provisions by controlling what they say to the market." *Matrixx*, 563 U.S. at 45. "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *City of Edinburgh Council*, 754 F.3d at 174 (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)).

11

merely speculative."); *In re Express Scripts Holding Co. Sec. Litig.*, No. 16-3338, 2017 WL 3278930, at *11 (S.D.N.Y. Aug. 1, 2017) ("Where an outcome is merely speculative, the duty to disclose does not attach."). Here, Plaintiff alleges that Bridgelink Commodities' ability to purchase Eos products was threatened by the financial and legal issues of its parent company, rendering Eos' statements about its backlog misleading. (SAC ¶ 64.) However, Plaintiff has failed to establish that this alleged threat to Bridgelink Commodities' ability to purchase Eos products materialized at the time the backlog-related statements were made on May 9, 2023 and May 10, 2023 such that the statements were misleading.[3] Accordingly, Plaintiff fails to establish a material misstatement or omission, and Count 1 is dismissed without prejudice.[4]

### B. Count 2: Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

In Count 2, Plaintiff alleges individual Defendants Joseph Mastrangelo and Nathan Kroeker violated Section 20(a) of the Exchange Act. (SAC ¶¶ 100-03.) Section 20(a) of the Exchange Act provides:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable . . . unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a). Liability under Section 20(a) "is derivative of an underlying violation of Section 10(b) by the controlled person." *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir.

---

[3] Plaintiff's SAC likewise does not establish that Bridgelink Commodities, to date, has failed to meet its contractual obligations with Eos. And Plaintiff does not sufficiently allege that at the time Defendants made the statements on May 9, 2023 and May 10, 2023, Defendants knew of Bridgelink Commodities' potential inability to satisfy its contractual obligations as a result of its parent company's legal and financial issues.

[4] Because the Court dismisses Plaintiff's claim for failure to establish material misstatement or omission, the Court declines to address the other bases for dismissal proposed by Defendants.

2013) (quoting *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009)). "Thus, for a controlling person to be liable, the person over whom control was exercised must have committed a primary violation of the securities laws." *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 280 (D.N.J. 2007) (citations omitted). Because the Section 10(b) claim is dismissed for failure to state a claim, Plaintiff's Section 20(a) claim (Count 2) is also dismissed without prejudice.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (ECF 26) is **GRANTED.** Plaintiff's Second Amended Complaint is **DISMISSED without prejudice**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Michael A. Hammer, U.S.M.J.
    Parties